Good morning, Jeff Jerka here for the appellant Balram Trucking. I would respectfully request three minutes for rebuttal. It is our position in this case that the district court erred in three respects. The first being that under the circumstances of this case, finding that Central Transport had standing to assert a claim directly against Balram for damage to the tractor and pursuant to a lease agreement that existed between Central and the actual owner of the equipment, GLS Lease Co. The court, in rendering that decision, relied on an Indiana state court decision, STERE. But I think our position is that the district court's reliance on that case was incorrect simply because as the court noted in its decision on rehearing, under certain factual circumstances. Further, Indiana law is clear that when the express terms of an agreement address the party's rights as to standing, those express terms should... Unless there's express terms in the contract. Here, there aren't any express terms in the contract. Therefore, the term expressly contains terms. That's how I take your argument. I would respectfully disagree with that. Where are the express terms then? Certainly, Your Honor. The lease agreement makes specific reference to the granting of subrogation rights to Central under a certain limited expressly stated factual circumstance, which is in instances in which Central wished to pursue claims for damage based on manufacturing or design... Excludio uneus, excludio alterius? I think that's correct, Your Honor. Certainly... I'm a little bit weak to say that that's an express change when it's using a canon that assumes there's no expression. Well, I would respectfully submit to the court, and I understand the court's concern. Certainly, if the lease agreement said Central shall self-insure and may pursue claims including but not limited to manufacturing warranting claims, that may be a different situation here. But the lease agreement here carves out and refers to only one specific factual scenario, which is quite specific in outlining that Central can pursue those claims, manufacturing warranting claims, product liability claims, in essence. Those claims alone and only upon an express assignment granted to it by GLS lease code. And we think that those express terms of the contract are controlling here. Those are express terms that authorize something else and by negative inference preclude it. Correct. That is our position. That is a negative inference, right? Understood, Your Honor. I'm asking. Yes, no, I agree. I agree with you. Yes, sir. I note further that Indiana law talks about the fact that subrogation is appropriate to prevent unjust enrichment by the subrogor. In this case, of course, if GLS lease code had pursued ball ram directly, there would be no unjust enrichment argument. And so, again, that argument doesn't fly here. In addition to that, the court went on to find that an assignment document, undated, executed by Mr. Calderon of GLS lease code authorized this claim to proceed. We've spent a considerable amount of time in our brief talking about the rather interesting testimony of Mr. Calderon at deposition where when deposed in August of 2016, he repeatedly said, well, I became president of the company four months ago in April of 2016. And prior to that time, although I did some consulting work for the company, I had no authority to bind it. At trial, of course, he reversed that testimony and said, well, actually, I was wrong. I meant to say that I was president back in April of 2015. Setting all of that aside, the more fundamental problem for Central in this case is that there is no evidence that this assignment document was executed prior to the expiration of the statute of limitations. At best, Central had evidence that it was signed sometime in the summer of 2015, if one assumes that's credible, but nothing that specifically indicates that it was signed prior to the expiration of the statute of limitations. The third error made by the district court actually goes back to the beginning, and we believe that the district court abused its discretion in refusing to enforce the original settlement agreement between the parties reached at mediation. Why did it do that? You mean it did that by denying a summary judgment motion? Correct. Isn't the denial of a summary judgment motion non-appealable in the circuit? I mean, I don't understand how you appeal the denial of a summary judgment motion, unless it's final, but it's not final. Okay. And I believe that now that we have a final decision, I would believe that that's the basis in how it works for summary judgments, unless you're in a qualified immunity case or unless there's a 1292B certification. All the denial of a summary judgment is to say there's a genuine issue. Saying a genuine issue doesn't resolve the case, right? Did it ever resolve it after having said there was no genuine issue of material fact? Well, I think that the record was pretty clear that the parties understood that it's different from a judicial ruling that we would review, right? I'm just mystified by that whole part of your argument. It just, like, didn't compute in my mind. You asked for a summary judgment, and it's denied on the theory there's a genuine issue of material fact. Then somebody has to resolve that. Was it argued at the bench trial? I guess is the question. I understand, and that is correct. It was not. Okay. Having said that, I do believe, setting aside that issue, that issue is dispositive unless you have an answer to it. Well, if you either can or can't appeal the interlocutory denial of a summary judgment, what you appeal from is what happens after. But you didn't appeal anything that happened after that. You're just appealing some sort of interlocutory. Basically, it's an order saying we're going to keep going. It's not over. Okay. So now you're appealing the fact that they kept going. That's not something you can appeal. You've got to appeal something that happened when you kept going. Does that make sense? Actually, I'm a little lost, Your Honor, with all due respect, simply because the fact that we have had a trial on the merits with regard to the validity of Central's claims, and that was decided on the merits. Was the genuine issue of material fact that he found when he denied? Was it he or she? Who's the judge? It was Magistrate Judge Newman. Oh, Newman. All right. When Judge Newman found that there was a genuine issue of material fact, was that genuine issue of material fact ever then resolved? Well, there was no further evidence on that at the bench trial if that's the Court's question. So they never resolved it. So now you're appealing from the lack of resolving it? That's confusing. If you're confused now, we're both confused. Okay. And I don't mean for the Court to be confused. I'm thoroughly confused by the argument. It just doesn't seem to be a coherent argument to me to say that you're appealing the determination that there was a genuine issue of fact. Normally in our circuit you can't do that. Okay. And I understand the Court's concern. My point being that the district court still erred on its ultimate ruling on the merits of Central Transport's ability to maintain this claim in the first instance, which is different from ‑‑ I understand that. Okay. This is the third issue. I'm not saying ‑‑ I understand. I understand. When you use the summary, you're expected to then argue the disputed fact at the trial and have a resolution of that. And then that's the way you preserve the issue for appellate review. I understand the Court's concern. Having said that, I do believe that the record is pretty clear that the Court did err on its ultimate determinations of the issues relating to the lease and assignment as I've discussed earlier. Sure. Those are different issues. Okay. It's the third issue that I'm ‑‑ I'm not sure what the right answer is to your first two issues, but at least I understand what the argument is. Okay. Sorry to interrupt. Oh, no, not at all. I believe I will defer the rest of my time for rebuttal unless there are any other questions from the Court at this point. Do you have any? No, thank you. Thank you very much. May it please the Court, Counsel, my name is Robert Buchbinder here on behalf of the Appellee Central Transport, LLC. I guess I will dispose of the argument relating to summary judgment on the mediation. There was no testimony at the trial relating to further dispositive testimony on what happened with the mediation and the mediation agreement. So I will then focus my time, that remains, with respect to the lease and with respect to the argument on the assignment. Your Honors, the Court found that Central Transport had standing pursuant to the lease agreement and the Court declined to conclude anything with respect to standing pursuant to the assignment. And I think that's an important distinction. The Court was focused on the rights, whether they were common law, practice and ‑‑ that was elicited at trial as to what Central Transport's rights were with respect to collecting its damages for the tractor trailer. I think the Court is aware that all but about $30,000, I can't really recall the number, but it looks like everyone agreed that the damages of about $52,000 were stipulated. It just came down to the tractor trailer damages of about $30,000. And that's where the rub was because it had to do with Ballram's contention that the lease did not have specific language entitling Central Transport to collect its damages. There was no testimony that contradicted the testimony of Mrs. ‑‑ Is that before us now? I thought the issue before us was ‑‑ The enforceability of the lease and the assignment. The assignment and the enforceability by you of the lease, right? Yes, sir. I thought you were now arguing the merits of those issues. Well, go ahead. Maybe it will become clearer. Okay. Well, Your Honor, I would point out that with respect to the lease, Central Transport is the real party in interest and has legal standing to pursue its tractor trailer damages. I think that frames the issue for the Court. It's undisputed that the ‑‑ You're arguing the argument, right? Yes, sir. Okay. You're arguing the legal standing issue. Yes, sir. Okay. Thank you. So, Your Honors, I guess under ‑‑ I would look at Ballram's argument. Their contention appears to be that GSL Lease Co. had the right to pursue the subrogation claim. It is Central Transport's position that under its lease, it had the right to pursue those claims. Under Ballram's frame of thinking through this, it appears to me that what they're saying is that following this accident, Central Transport would have an obligation to keep paying on its lease obligations for this tractor trailer, and it did. That's the undisputed testimony. It had the obligation then to repair the unit or return it to its normal condition. It had that obligation. Under the lease, it's everywhere written in the lease in five or six provisions. But it's Ballram's position that Central Transport then didn't have the right to collect the damages that GSL Lease Co. would have to bring the claim. And then if GSL Lease Co. brought the claim, I'm assuming that means that Central Transport then has to bring another subrogation claim against GSL Lease Co. to collect what it's already paid under the lease and for the damages to the tractor trailer. This makes no sense. This is not how a lease operates in our world. If we lease a car and someone puts a rock through the window, I don't go to the leasing company and say, you need to fix my car. He says by negative implication that is what's required. How do you respond to that? I don't think there's any negative inference here. Sometimes in the law or in contract interpretation, if they say this is required except in these circumstances, then you assume that in those circumstances it's not required or whatever. The only exception that Ballram raised, Your Honor, had to do with the manufacturer's warranty. In that case, Mr. Calderon testified at trial, we have four or five people that buy tractor trailers for GSL Lease Co., and that's all we do is buy and lease tractor trailers. We don't have anybody who maintains tractor trailers. We don't have any experts. So if there's a defect, yes, we want Central Transport to be the one to enforce that right and have the ability to go after a manufacturer's claim if there's a defect. We all get that. But the judge at the district court here looked at the common law, looked at the Sturry case, and I would point out that Ballram's argument that there is some sort of exception in the Sturry case, yes, there was an exception. The hypothetical that was just hypothetically discussed had to do with the fact that possibly if an insurance company steps in and pays the claim, well, then, in that particular case, that contractor would have lost his right to pursue the subrogation claim against the utility company. So with that in mind, that's not the exception that we're talking about here in this case. Your Honor, I would also point out that the assignment that was executed here, the statute of limitations expired August 28, 2015, and they took some exception. Ballram took exception with Mr. Calderon changing his testimony, apparently. I think if you read the transcript, this happened during the direct examination, and he acknowledged as he testified that he must have made a mistake. The court specifically found this to be credible. But the more difficult question is, I think your evidence only showed that the assignment had been executed in the summer of 2015. That's correct. And you had to prove that it was July the 6th. That's the best evidence that we had. So you're saying that's enough to find that the statute was met. I think so, Your Honor. And there was no evidence to the contrary. And the testimony that – well, actually, the way the court ruled was that they were taking no position on the assignment. Instead, the court was relying upon the lease to give Central Transport the standing it had to pursue its subrogation claim to collect the damages. So that language is very specific. The court takes, given that Central Transport had standing pursuant to the lease agreement, the court declined to conclude anything with respect to standing pursuant to the assignment. I think that's the way for the court to say, yes, there was some testimony that changed. Yes, in fact, there was some testimony about when the assignment was signed. And the testimony, I think, from Mr. Calderon and Ms. Bouchard was the reason the assignment was presented in the first place was they called this belt and suspenders. That's the way they phrased it during the trial. But the point was they were trying to impress upon Ballram to try to get this case out of a log jam. We have all these rights. We have the right to pursue this. Why are you not agreeing to allow us to get our tractor-trailer damages? And so we've been down this road several times. Your Honor, I had a chunk of time set forth relating to the mediation agreement, but I do agree with the court's analysis, and I'm not going to take any more of the court's time. Unless there's any other questions, I am unwrapped. Thank you, Your Honors. Mr. Jerka, do you have a question? Yes, thank you, Your Honor. Very briefly, I would take issue with Mr. Buckbinder's characterization of the district court discussion of the assignment where the court says, I cannot conclude one way or another when this document was executed, but I find it to be valid. That seems to be internally inconsistent and not make any sense, and critical to this case given that the lease agreement, in our minds, sets forth, as I've discussed, some very explicit provisions which would allow Central Transport to pursue damages, none of which are applicable herein. It is a little confusing, what the judge says on this actual assignment issue. It's just a sentence or two, right? True. I would agree. Most of the district court's opinion goes to the other part of what the law of Indiana is. Right. That is correct. Again, I think I've expressed my opinion with regard to what the law states and what the lease document states in this case, and I think that's dispositive in our favor. Thank you. Thank you. Thank you, counsel. The case will be submitted. We'll now take a brief recess.